**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**ARNOLD LUMBER CO., d/b/a**
**SEASIDE CASUAL FURNITURE**

**V.** **CA:07-073ML**

**ZICOM, INC. and DANIEL CANARY d/b/a**
**ARCHITECTURAL DESIGN d/b/a PREMIUM**
**POLY PATIOS, ARCHITECTURAL d/b/a PREMIUM**
**POLY PATIOS and PREMIUM POLY PATIOS**

**PLAINTIFF'S MOTION FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER**

Now comes plaintiff, Arnold Lumber Co., and pursuant to Federal Rule of Civil Procedure 65, hereby moves that this Court issue a Temporary Restraining Order, enjoining defendants from using plaintiff's trade names "Seaside Casual Furniture, "Shell Back" and "Envirowood" on defendants' Premium Poly Patios website; from using plaintiff's photographs of Seaside Casual Furniture's line of Envirowood products on the Premium Poly Patios website; and from using the domain names www.envirowood-furniture.com and www.envirowoodfurniture.com. In support of this request for injunctive relief, plaintiff has submitted a memorandum of law.

Arnold Lumber Co.,
d/b/a Seaside Casual Furniture
By its attorneys,

Carl S. Levin (#3336)
Armstrong, Gibbons & Gnys, LLP
155 South Main Street, Suite 301
Providence, Rhode Island 02903
(401) 751-1500 Ext. 26
(401) 751-4124 FAX
clevin@agglaw.com

# TABLE OF AUTHORITIES

**CASES**

Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir.1976)

Armington v. Palmer, 42 A. 308 (R.I. 1898)

Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp., 376 F.Supp.2d 251 (D.R.I. 2005)

Bostitch, Inc. v. King Fastener Co., 140 A.2d 274 (R.I. 1958)

Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175 (1st Cir.1993)

Boston Professional Hockey Association, Inc. v.
Dallas Cap & Emblem Manufacturing, Inc., 510 F.2d 1004 (5th Cir. 1975)

DeCosta v. Viacom Intern., Inc., 981 F.2d 602 (1st Cir. 1992)

Energy Jet, Inc. v. Forex Corp, 589 F. Supp. 1110(E.D. Mich. 1984)

Graduate Management Admission Council v. Raju, 267 F.Supp.2d 505 (E.D.Va., 2003)

Hank Thorp, Inc. v. Minilite, Inc., 474 F. Supp. 228 (D.Del. 1979)

I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27(1st Cir. 1998)

Johnny Blastoff, Inc. v. Los Angeles Rams Football Co., 188 F.3d 427 (7th Cir. 1999)

Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F.Supp.2d 567 (E.D.Pa., 2002)

Merlino v. Schmetz, 20 A.2d 266 (R.I. 1941)

National Lumber & Bldg. Materials Co v. Langevin, 798 A.2d 429, 433 (R.I. 2002)

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.1961)

Sayles Biltmore Bleacheries Inc. v. Narragansett Wiping Supply Co., 134 A.2d 57 (R.I. 1957)

Schroeder v. Lotito, 577 F.Supp 708, (D.R.I. 1983)

Sporty's Farm L.L.C v. Sportsman's Market, Inc., 202 F.3d 489 (2d Cir. 2000)

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992)

Venetian Casino Resort, LLC v.VenetianGold.com, 380 F.Supp.2d 737 (E. D. Va., 2005)

Victoria's Secret Stores v. Artco Equipment Co., Inc., 194 F.Supp.2d 704 (S.D.Ohio.E.Div., 2002)

Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F. 3d 36 (1st Cir. 2005)

W.W.W. Pharmaceutical Co. v. Gillette Co., 984 F.2d 567 (2d Cir. 1993)

**STATUTES**

28 U.S.C.A. § 1331

28 U.S.C.A. § 1332

28 U.S.C.A. § 1338

28 U.S.C.A. § 1367

28 U.S.C.A. §1391

28 U.S.C.A. §1400

22 U.S.C. §1116

Lanham Trade Mark Act § 43, 15 U.S.C. § 1125

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**ARNOLD LUMBER CO., d/b/a**
**SEASIDE CASUAL FURNITURE**

**V.** **CA:** CA 07 073ML

**ZICOM, INC. and DANIEL CANARY d/b/a ARCHITECTURAL DESIGN d/b/a PREMIUM POLY PATIOS, ARCHITECTURAL d/b/a PREMIUM POLY PATIOS and PREMIUM POLY PATIOS**

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER, AND A PRELIMINARY AND PERMANENT INJUNCTION

## INTRODUCTION

Plaintiff, Arnold Lumber Co. (hereinafter referred to as "Arnold"), a division of which is doing business as Seaside Casual Furniture (hereinafter referred to as "Seaside"), has filed a Verified Complaint, with exhibits attached thereto, signed by Bruce Charleson, President and CEO of Arnold. Pursuant to the Verified Complaint, plaintiff is requesting that this Court issue a temporary restraining order, a preliminary injunction and, thereafter, a permanent injunction against defendants Zicom, Inc. (hereinafter referred to as "Zicom") and Daniel Canary, who are doing business as Architectural Design d/b/a Premium Poly Patios, Architectural d/b/a Premium Poly Patios and as Premium Poly Patios (hereinafter collectively referred to as "defendants"). Plaintiff seeks to enjoin defendants from using plaintiff's trade names "Seaside Casual Furniture, "Shell Back" and "Envirowood" in defendants' web-based business selling outdoor furniture on defendants' Premium Poly Patios website.

Plaintiff also seeks to enjoin defendants from using plaintiff's photographs of Seaside Casual Furniture products on the Premium Poly Patios website to falsely advertise its ability to sell Seaside furniture products; and to use those same photographs to sell Poly-Wood and Poly-Lumber outdoor furniture. Plaintiff also seeks to enjoin defendants from using the domain names www.envirowood-furniture.com and www.envirowoodfurniture.com. The web site, www.envirowood-furniture.com, redirects the user to the website, www.poly-lumber-furniture.com, which is the website for Premium Poly Patios.

## STATEMENT OF FACTS

Seaside has been in business since 1996. **(Verified Complaint, paragraph 6)** Seaside designs, fabricates and sells outdoor furniture. Plaintiff has been using the trade name "Seaside Casual Furniture" continuously since 1996. **(Verified Complaint, paragraph 12)** Seaside has maintained a website, www.seasidecasual.com, since 1997. **(Verified Complaint, paragraphs 31 & 32)** The furniture manufactured by Seaside is constructed of either mahogany wood or a material that Seaside has labeled "Envirowood", which is a product that is comprised of recycled plastic bottles and containers, and is permeated with UV stabilized coloring that is consistent throughout the entire product. **(Exhibit "C")** Envirowood has the same look as traditional painted wood and requires no maintenance other than cleaning with soap and water. **(Exhibit "C")** Seaside has designed, manufactured and sold Envirowood furniture continuously since 2001. **(Exhibit "D")** Seaside's Envirowood line of furniture includes foot stools, end tables, dining tables, chairs, benches, picnic tables and swings. **(Exhibit "C")**

Seaside has continuously advertised its Envirowood line of furniture since 2001, and Seaside's catalogues and brochures have specifically identified this line of furniture as "Envirowood" since 2001. **(Exhibit "C")** Seaside's line of Envirowood furniture includes furniture that is identified by the name "Shell Back", which name has been used continuously since 2001. **(Exhibit "C")** Seaside's furniture has a name plate attached identifying the furniture as having been produced by "Seaside Casual Furniture Co." **(Exhibit "E")** Seaside provides a twenty (20) year warranty for its Envirowood furniture. **(Exhibit "C")**

Plaintiff authorizes dealerships for its Seaside furniture pursuant to certain guidelines established and maintained by the company. Since 2003, the dealership guidelines require:

- dealers have a showroom that is open to the public during regular hours, is listed in the local phone book, is staffed with sales personnel, advertises in local media, and displays Seaside Casual Furniture purchase materials;
- dealers have a warehouse with the ability to inventory items on display, the ability to set up and deliver Seaside Casual Furniture products to customers, the capacity to receive warranty returns from customers, and a willingness to make small repairs before delivery;
- dealers participate in Seaside Casual Furniture programs, display new product offerings, comply with Seaside Casual Furniture's "minimum advertising program", and conform to Seaside Casual Furniture's e-commerce policy; and
- dealers be in good standing with Seaside Casual Furniture's credit department and supply accurate credit information.

**(Verified Complaint, paragraphs 33-37)**

In order to promote Seaside's products, authorized dealers use Seaside's catalogues, copy photographs from a CD issued by Seaside, or download photographs from the Seaside website. Authorized dealers purchase the furniture that they sell (1)

with the dealer's credit card, (2) with a check in advance of delivery or (3) or on credit with Arnold. **(Verified Complaint, paragraph 40)**

Zicom is a Florida corporation organized and doing business under the laws of the State of Florida, with a principal address of 1200 Falcon Avenue, Miami Springs, Florida **(Exhibit "A")**, which is Daniel Canary's residence. **(Exhibit "B")** Daniel Canary is Zicom's President and Treasurer, and Pamela Shelow is its Vice President and Secretary. **(Exhibit "A")** Zicom does not have a showroom or business address other than Mr. Canary's residence.

In late 2005 or early 2006, Pamela Shelow and Daniel Canary made several telephone calls to Andy Boyce, the manager of Seaside, to express an interest in becoming an internet dealer for Seaside under the name Premium Poly Patios. During these telephone conversations, Andy Boyce would explain Seaside's requirements to become an authorized dealer and explain its policy of not opening a dealership that exclusively sold products on the internet. Daniel Canary would inquire into ways to get around Seaside's showroom and other dealership requirements, and would insist that Seaside sell to him because he sells "tons of furniture" on the website of Premium Poly Patios. Andy Boyce explained that Seaside would not make an exception. The conversations would end with Daniel Canary hurling insults and unfounded accusations at Andy Boyce, and Pamela Shelow yelling expletives in the background. Subsequent to these conversations, Pamela Shelow and Daniel Canary contacted Andy Boyce and said that in order to fulfill Seaside's requirement for a "showroom", they would order some chairs and place them in a break room at a millwork business that Daniel Canary owned on a 50/50 basis with Pamela Shelow located at 3545 50th Street, Miami,

Florida. Andy Boyce told Daniel Canary that this would not meet Seaside's criteria for a dealership and that Seaside would not sell to him under this arrangement. **(Verified Complaint, paragraphs 44-54)**

Unbeknownst to Andy Boyce, Arnold received a credit application submitted by Daniel Canary on March 1, 2006, under the name Architectural d/b/a Premium Poly Patios. **(Exhibit "J")** The credit application submitted for Architectural d/b/a Premium Poly Patios was signed by Daniel Canary. The only known corporation with the name "Architectural" with a correlation to Daniel Canary is Architectural Moulding & Millworks, Inc., which is a Florida corporation that does not list Daniel Canary as an officer. **(Exhibits "K" & "N")** Architectural Moulding & Millworks, Inc., which does not sell outdoor furniture **(Exhibit "O")**, is situated on property located at 3545 N.W. 50 Street, Miami Springs, Florida, which property is owned by Humdol, Inc. **(Exhibit "L")** and which was proposed by Daniel Canary as a Seaside Casual Furniture showroom. Daniel Canary is not an officer of Humdol, Inc. **(Exhibit "M")** The address listed on the credit application was Mr. Canary's residence at 1200 Falcon Avenue, Miami Springs, Florida. **(Exhibits "B" & "J")** Upon receipt of the credit application, Arnold ran a credit check on Daniel Canary and Pamela Shelow, which revealed that both Daniel Canary and Pamela Shelow had a credit rating that was not acceptable to Arnold. **(Exhibit "Q")** On April 14, 2006, John Murano, Credit Manager for Arnold, sent to Daniel Canary a rejection of the credit application submitted for Architectural d/b/a Premium Poly Patios. **(Exhibit "R")**

Also unbeknownst to Andy Boyce, defendants began ordering Envirowood products from Seaside's sales department. Between April 13, 2006 and May 4, 2006,

defendants placed nine (9) orders for Envirowood furniture totaling $7,499.60. **(Exhibit "S")** At defendants' direction, the furniture was shipped to defendants' customers in five states. . **(Exhibit "S")**

On April 20, 2006, Daniel Canary registered the web site www.envirowood-furniture.com with GO DADDY SOFTWARE, INC. **(Exhibit "V")** This website redirects the user to the website www.poly-lumber-furniture.com, which is the website for Premium Poly Patios. **(Exhibit "W")** The Premium Poly Patios' website advises customers to call telephone number (888) 883-3113 for assistance. **(Exhibit "W")** This is the same phone number as that listed on the credit application submitted by Daniel Canary for Architectural d/b/a Premium Poly Patios. **(Exhibit "J")**

The Premium Poly Patios' website advises customers that credit card charges will be billed to Zicom, Inc.; represents that it is an authorized dealer for Seaside's Envirowood furniture and that the Seaside furniture is not available; and represents that it sells Poly-Wood furniture and Poly-Lumber furniture. The Premium Poly Patios' website also uses the term "Shell Back" to identify the Poly-Wood and Poly-Lumber furniture. **(Exhibits "W" & "Y")**

The Premium Poly Patios' website uses the same product description for the Poly-Wood and Poly-Lumber furniture as that used by Seaside Casual Furniture to describe its products, and uses certain Seaside Casual Furniture photographs to advertise the Poly-Wood and Poly-Lumber furniture lines **(Exhibits "W" & "Y")**. Further, someone on behalf of Premium Poly Patios copied photographs of Seaside Casual Furniture's line of products from authorized dealer websites. After copying the Seaside photographs, someone inserted on certain photographs the tag line

**"ENVIROWOOD - Eco-Friendly Furniture For a 'World' of difference!"** Someone on behalf of Premium Poly Patios also inserted Seaside Casual Furniture's signature picture of a rocking chair and the tag line "**Seaside Casual Furniture**" on other photographs of Seaside Casual Furniture Envirowood furniture. **(Exhibits "Y", "AA" & "BB")**

On May 30, 2006, Andy Boyce viewed the Premium Poly Furniture website and observed that Seaside Casual Furniture was listed for sale by Premium Poly Patios. That same day, Andy Boyce sent an e-mail correspondence to Daniel Canary at the email address admin@poly-lumber-furniture.com, requesting that he remove Seaside Casual Furniture's Envirowood products from his web site. Daniel Canary sent a response e-mail refusing to remove Seaside Casual Furniture's product from his website. **(Exhibit "U")**

On that same date, Zicom filed a trademark/service mark application with the United States Patent and Trade Office for the term "Envirowood". **(Exhibit "EE")** Zicom's application represented that it first began using the term "Envirowood" on March 10, 1998, and first began using the term "Envirowood" in commerce on May 25, 2001. Zicom's application for the name "Envirowood" was refused pending a request for additional information requested by the examining attorney. Subsequently, on February 8, 2006, Zicom, Inc. filed its response with the Trademark Office. **(Affidavit of Attorney Robert Salter)** The application is currently pending in the Trademark Office. The term "Envirowood" had previously been the subject of a trademark filing by Chicagoland Processing Corporation in 1992 and Diversified Plastics, Inc. in 1996. These filings, however, were abandoned. **(Exhibit "FF")**

On June 6, 2006, Andy Boyce called Daniel Canary to make a second request that he remove the Seaside Casual Furniture products from his website. Daniel Canary again refused. **(Verified Complaint, paragraphs 111-112)**

On December 19, 2006, Attorney Robert Salter on behalf of Arnold, filed a trademark/service mark application with the United States Patent and Trade Office for the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood". **(Exhibits "CC", "DD" & "GG")** The applications state that these terms were first used in commerce as early as November 1, 1996 and January 1, 2001 respectively, which dates are prior to Zicom's use of these terms. **(Exhibits "CC", "DD" & "GG")** Plaintiff will oppose Zicom's trademark application for the mark ENVIROWOOD if and when it is published based on a fraudulent first use date that was listed in that application. **(Affidavit of Attorney Robert Salter)**

On January 2, 2007, Attorney Robert Salter sent a letter on behalf of plaintiff to Daniel Canary by facsimile transmission, regular mail and e-mail instructing him to cease using the term "Envirowood". **(Exhibit "HH")** That same date, Daniel Canary registered the domain name for the website www.envirowoodfurniture.com with GO DADDY SOFTWARE, INC. **(Exhibit "II")** Later that day, Daniel Canary sent an e-mail to Attorney Salter advising that he was the owner of the term "Envirowood". Daniel Canary also represented in his message that his company had been using the name Envirowood for decking material since 1999, and demanded that Seaside Casual Furniture cease using the term "Envirowood". **(Exhibit "JJ")** On January 16, 2007, Attorney Salter sent an e-mail to Daniel Canary again requesting that he cease using the

term "Envirowood", to which Daniel Canary sent a response e-mail to Attorney Salter again refusing to cease using the term "Envirowood". **(Exhibit "JJ")**

Plaintiff's substantial advertising, promotion and sales of Seaside Casual Furniture's Envirowood furniture has ensured that consumers recognize plaintiff's trade marks "Seaside Casual Furniture", "Shell Back" and "Envirowood" and associate those trade marks with plaintiff. Consumers also associate those marks with plaintiff's reputation for high quality furniture and for honoring its warranty for its furniture. Contrarily, defendants have no evidence of prior use of these terms other than having displayed those terms, along with plaintiff's photographs, on the Premium Poly Patios website in conjunction with its purported ability to sell this furniture. **(Verified Complaint, paragraphs 168-170)**

Defendants have intentionally and deliberately used plaintiff's photographs and plaintiff's trade marks "Seaside Casual Furniture", "Shell Back" and "Envirowood" to deceive consumers by luring customers to the Premium Poly Patios website as a means of selling Poly-Wood and Poly-Lumber furniture products. This is further evidenced by the fact that defendants' website www.envirowood-furniture.com redirects the user to the website www.poly-lumber-furniture.com, which is the website for Premium Poly Patios. **(Exhibit "Y")** Defendants have acted intentionally and deliberately to benefit from and take advantage of plaintiff's goodwill, good name and reputation, with the intention of causing confusion in the minds of consumers as to the relationship or affiliation between Seaside and Premium Poly Patios. Defendants' conduct has and will result in a loss of goodwill, and damage to the good name and reputation of Seaside by intentionally creating the perception that there is a relationship between

Seaside and Premium Poly Patios, and intentionally making the impression that Poly-Wood and Poly-Lumber is of equal quality to Seaside furniture. Also, by indicating on the Premium Poly Patios website that the Seaside furniture is not available, this leads customers to believe that Seaside Casual Furniture is not available for sale by any other dealer.

Plaintiff will suffer irreparable harm unless defendants are enjoined from using plaintiff's trade names "Seaside Casual Furniture, "Shell Back" and "Envirowood" on defendants' Premium Poly Patios website, from using plaintiff's photographs of Seaside Casual Furniture's line of Envirowood products on the Premium Poly Patios website and from using the domain names www.envirowood-furniture.com and www.envirowoodfurniture.com.

## QUESTIONS PRESENTED

At this time, plaintiff is not seeking a declaration of the parties' rights in accordance with their filings with the United States Patent and Trade Office. Rather, the preliminary questions to be resolved by this Court are:

1.) Are the defendants in violation of the *Lanham Act* and common law by using plaintiff's trade names "Seaside Casual Furniture", "Shell Back" and "Envirowood" where such names are all distinctive to plaintiff's products, have acquired secondary meaning in the marketplace and will cause confusion in the marketplace when used by defendants?

2.) Are the defendants in violation of the *Lanham Act* and common law by registering and using the domain names www.envirowood-furniture.com and

www.envirowoodfurniture.com since the name "Envirowood" is distinctive of plaintiff's products, has acquired secondary meaning in the marketplace, and will cause confusion in the marketplace when these domain names are used by defendants?

3.) Are the defendants in violation of the *Lanham Act* and common law by using plaintiff's photographs of its Seaside Casual Furniture line of Envirowood products?

4.) Is the plaintiff entitled to injunctive relief preventing defendants' wrongful use of plaintiff's trade names, photographs and the domain names www.envirowood-furniture.com and www.envirowoodfurniture.com when plaintiff has a reasonable likelihood of success on the merits, plaintiff will suffer irreparable harm if the requested relief is not granted, the balancing of the equities favors plaintiff, and there will continue to be confusion in the marketplace until such time as defendants are enjoined from this conduct?

Based upon the Verified Complaint and the exhibits attached thereto, and based upon the legal principals enunciated in this memorandum of law as applied to the facts, it is clear that plaintiff is entitled to injunctive relief.

## LEGAL ANALYSIS
### The decision to grant injunctive relief

The decision to grant injunctive relief lies within the sound discretion of the Court. *Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F. 3d 36 (1st Cir. 2005). In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of the equities in his or her favor; and (4) the effect of such a ruling on the public's interest.

*Id.* at 46. "The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that [it] is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Ibid, quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002).

**The Lanham Trade Mark Act and Rhode Island common law prohibit defendants from using the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" because these terms are distinctive to plaintiff's furniture, have acquired secondary meaning in the marketplace, and defendants' use of these terms will cause consumer confusion in the furniture marketplace.**

The owner of an unregistered trademark is entitled to protection under the *Lanham Trade Mark Act* ("*the Lanham Act*") if it establishes that its mark is either inherently distinctive or has acquired distinctiveness through secondary meaning, and that there is a likelihood of confusion if another person uses or attempts to use the same or similar marks. *Lanham Act* § 43, 15 U.S.C. § 1125; *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769-70 (1992). Specifically, the *Lanham Act* provides as follows:

> **(a) Civil action**
> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*The Lanham Trade Mark Act, §43, 15 U.S.C. §1125*

The terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" are inherently distinctive names used by plaintiff in the furniture marketplace. Additionally, these terms have acquired secondary meaning because they have been used continuously by plaintiff in the marketing and sale of Envirowood furniture since 2001. Defendants' use of these terms in conjunction with the Premium Poly Patios website will lead to confusion in the marketplace. Defendants have used these terms in bad faith in an effort to lure customers to the Premium Poly Patios website, whereupon since defendants do not have the ability to sell Seaside Casual Furniture, the customers are intentionally directed to the alternative purchase of Poly-Wood and Poly-Lumber furniture. Defendants are engaging in a classic "bait and switch" tactic to sell Poly-Wood and Poly-Lumber furniture.

**Plaintiff has a protected legal interest in the distinctive terms "Seaside Casual Furniture", "Shell Back" and "Envirowood".**

Whether a mark is inherently distinctive is a question of fact, *Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir.1993), requiring a review of five general categories of distinctiveness: generic; descriptive; suggestive; arbitrary; and fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic mark is generally a common description of goods that refers to, or has come to be understood as referring to, "the genus of which the particular product is a species." *Id.* at 9. Generic marks are generally not protected. *Ibid.*

A descriptive mark describes a product's features, qualities or ingredients in ordinary language, *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d

Cir. 1993), conveying forthwith "an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie* at 11. Generally, descriptive marks are difficult to protect unless secondary meaning can be proved through a period "substantially exclusive and continuous use" for a period of five years or more prior to the filing of the application. *Abercrombie* at 10.

A suggestive mark employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use "imagination, thought and perception to reach a conclusion as to the nature of goods." *W.W.W. Pharmaceutical* at 572. "A suggestive term is entitled to registration without proof of secondary meaning." *Abercrombie* at 11.

When a common word is applied in an unfamiliar way, the use is called arbitrary. *Ibid.* Fanciful is usually applied to words invented solely for their use as trademarks. Marks that are arbitrary, fanciful, or suggestive are considered inherently distinctive and are automatically entitled to protection under the *Lanham Act. Two Pesos* at 763.

When the aforementioned legal principals are applied to the instant matter, it is clear that plaintiff's terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" are subject to protection under the *Lanham Act* because these terms are inherently distinctive. Plaintiff has continuously used the name "Seaside Casual Furniture" since 1996, and has continuously used the names "Shell Back" and "Envirowood" since 2001. These terms are also inherently distinctive and identify plaintiff's furniture line and the furniture's features and qualities in ordinary language that consumers associate with Seaside's Envirowood furniture. The terms "Seaside Casual Furniture" and "Shell

Back" are common words that are used in an unfamiliar way, making their use in conjunction with the sale of Seaside furniture arbitrary. The terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" are also fanciful, as they were invented solely for the marketing, advertising and sale of Seaside's Envirowood furniture.

**Plaintiff has a protected legal interest in the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood", which have acquired secondary meaning in the marketplace.**

A mark acquires secondary meaning only if its primary significance in the minds of the public is to identify the source of the product or service. *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 41-42 (1st Cir. 1998). "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Ibid, quoting Inwood Laboraties, Inc. v. Ives Laboraties, Inc.*, 456 U.S. 844, 851 (1982).

Factors considered in determining whether a term has acquired secondary meaning include: market surveys, the length of use of the mark, the exclusivity of use of the mark, the manner of its use, the nature and extent of advertising and promotion of the mark, and "the size or prominence of [the original user's] enterprise." *Ibid.*

Upon application of the foregoing legal principals, it is also clear that plaintiff's use of the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" are subject to protection under the *Lanham Act* because they have acquired secondary meaning. These terms are of primary significance in the minds of the public because consumers identify Seaside as the source of Envirowood outdoor furniture, including its Shell Back collection. Plaintiff has continuously used these terms since 2001 in the

marketing, advertising and sale of its Envirowood line of furniture. The extensiveness of this marketing is also demonstrated by the use of the domain name www.seasidecasual furniture.com. since 1997.

**Defendants' use of the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" will lead to confusion in the marketplace.**

The likelihood of confusion as to a product's source is evaluated by balancing the eight factors set forth *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961) *See DeCosta v. Viacom Intern., Inc.*, 981 F.2d 602, 606 (1st Cir. 1992); *Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp.*, 376 F.Supp.2d 251, 259 (D.R.I. 2005). The Court must examine: the strength of the mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. *Polaroid* at 495. No one factor is necessarily determinative, but each must be considered. *Ibid. See Beacon* at 259. As the Second Circuit has held, "[t]he proper approach is to weigh each factor in the context of the others to determine if, on balance, a likelihood of confusion exists." *W.W.W. Pharmaceutical Co.* at 572. Additionally, the *Lanham Act* does not require proof of injury, and "by its very nature, trademark infringements result in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, the trademark owner cannot adequately be compensated." *Beacon* at 265.

To determine the strength of a mark, one must consider the tendency of the mark "to identify the goods sold under the mark as emanating from a particular,

although possibly anonymous source." *W.W.W. Pharmaceutical Co.* at 572 (quoting *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1130 (2d Cir.1979). This in turn is evaluated by considering: " (1) the degree to which it is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace." *Ibid.*

With respect to the issue of confusion, an inquiry must be made of "the general impression created by the marks, keeping in mind all factors which the buying public will likely perceive and remember", including but not limited to the sizes of the products, the products' logos and the manner in which the products are packaged. *Id.* at 573.

The proximity of the products relates to whether the products in question are in competition in the marketplace, are distributed in the same geographic area and appeal to a similar audience. The extent to which products "(or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." *Ibid.* Whether the prior user of a mark is going to "bridge the gap" requires inquiry into whether the prior user is going to enter into a market in which the subsequent user does business. *Id.* at 574.

Finally, the issue of actual confusion is at the heart of the *Lanham Act*, which seeks to avoid marketplace confusion that occurs when a seller attempts to leave the impression that his product is that of another. There is also reverse confusion, which occurs when the subsequent user of a mark "is likely to cause consumers to believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user." *Ibid.* (*quoting Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 583 (2d Cir.1991).

The foregoing legal principals clearly establish that defendants' use of the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" is likely to lead to confusion in the furniture marketplace. Although these terms are unique, they lack the strength necessary to distinguish plaintiff's furniture products from those marketed and sold on the Premium Poly Patios website due to the manner in which defendants have used these terms to lure customers to this website as a means of selling Poly-Lumber and Poly-Wood furniture. There is no difference in the marks "Seaside Casual Furniture", "Shell Back" and "Envirowood" used by plaintiff and those same terms used by defendants. As a result, there is complete proximity of the products sold by plaintiff and defendants. There is no likelihood that plaintiff will "bridge the gap" because plaintiff and defendants are using the exact same marks to market, advertise and sell outdoor furniture.

Defendants' conduct results in actual confusion in the marketplace because consumers are initially drawn to the Premium Poly Patios website in the course of their search for outdoor furniture. Once at this website, consumers learn that Seaside Casual Furniture is not available, leaving the impression that it is not available from any dealer. Having been deceptively directed to the Premium Poly Patios website, and wrongfully informed that Seaside's furniture is not available, consumers will purchase Poly-Wood and Poly-Lumber through this website.

Defendants are devoid of any good faith in adopting these marks; rather, it was done in retribution for plaintiff's refusal to allow defendants to become an Envirowood dealer. Defendants have acted intentionally and deliberately to benefit from and take advantage of plaintiff's goodwill, good name and reputation, with the intention of

causing confusion in the minds of consumers as to the relationship or affiliation between Seaside Casual Furniture and Premium Poly Patios.

The outdoor furniture marketplace is not for sophisticated consumers. To the contrary, this marketplace, enhanced by the worldwide web, is shopped by persons seeking access to products without having to actually visit a store. There is a great risk that consumers will believe that defendants are authorized dealers for Seaside Casual Furniture's Envirowood collection, as demonstrated by purchases of plaintiff's product through defendants' website. Further, defendants' use of the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" will cause confusion to the consuming public as to Premium Poly Patios' affiliation, connection or association with Seaside Casual Furniture. Finally, having been deceptively directed to the Premium Poly Patios website, and wrongfully informed that Seaside's furniture is not available, consumers will likely purchase Poly-Wood and Poly-Lumber furniture products that are available through this website.

Defendants' use of the domain names www.envirowoodfurniture.com and www.envirowood-furniture.com is also likely to cause mistake and/or deceive as to defendants' affiliation, connection or association with Seaside Casual Furniture, particularly when use of the domain name www.envirowood-furniture.com redirects the user to the website www.poly-lumber-furniture.com, which is the website for Premium Poly Patios. Furthermore, once the customer has been directed to the Premium Poly Patios' website, the customer is told that Seaside Casual Furniture products are not available and that "comparable" Poly-Wood and Poly-Lumber furniture is available.

**The facts in support of plaintiff's claim for relief from defendants' trade mark infringement under Section 43 of the Lanham Act also support a claim for relief from such conduct under Rhode Island common law.**

The facts supporting plaintiff's claim of trademark infringement under the *Lanham Act* also support a claim for trademark infringement under Rhode Island law. *See National Lumber & Bldg. Materials Co v. Langevin,* 798 A.2d 429, 433 (R.I. 2002). A party will have a protected interest in a trade name if it can establish that the name has actually been used in the conduct of business, *Sayles Biltmore Bleacheries Inc. v. Narragansett Wiping Supply Co.,* 134 A.2d 57, 61 (R.I. 1957), and that the name is either inherently distinctive or has attained secondary meaning. *National Lumber* at 433.

**Zicom's prior trademark application for the term "Envirowood" is not controlling because plaintiff has acquired superior common law rights to this name based on its prior use, as it has to the names "Seaside Casual Furniture" and "Shell Back" based on its prior use of these names since 1996 and 2001 respectively.**

Zicom's application for the term "Envirowood" on May 30, 2006 does not give Zicom priority over plaintiff to this term because "a trademark application is always subject to previously established common law rights of another party." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 435 (7th Cir. 1999). Plaintiff's continuous use of this term since 2001 in its advertising, marketing and sale of its Envirowood line of furniture clearly establishes that plaintiff's right to this term is superior.

It is important to reiterate that defendants did not use the terms "Seaside Casual Furniture", "Shell Back" or "Envirowood" until the time that defendants began to advertise plaintiff's furniture on the Premium Poly Patios website. Furthermore, there was never an agreement between the parties permitting defendants to sell Seaside

Casual Furniture **(Verified Complaint, paragraphs 44-54, 98-102)**, and plaintiff has never consented to defendants using these terms. **(Verified Complaint, paragraphs 135-143)** As a result, there is a legal presumption that plaintiff is the owner of these terms. *Energy Jet, Inc. v. Forex Corp*, 589 F. Supp. 1110, 1116 (E.D. Mich. 1984); *Hank Thorp, Inc. v. Minilite, Inc.*, 474 F. Supp. 228, 236 (D.Del. 1979); *McCarthy On Trademarks, Section 16:48.* This presumption may be rebutted upon review of the following factors, none of which is per se determinative:

1. Which party invented or created the mark.
2. Which party first affixed the mark to goods sold.
3. Which party's name appeared on packaging and promotional materials in conjunction with the mark.
4. Which party exercised control over the nature and quality of goods on which the mark appeared.
5. To which party did customers look as standing behind the goods, e.g. which party received complaints for defects and made appropriate replacement or refund.
6. Which party paid for advertising and promotion of the trademark protected.

*McCarthy on Trademarks, §16:48*

A review of these factors further demonstrates plaintiff's right to the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood". Plaintiff invented these terms as they apply to the manufacture and sale of outdoor furniture, and began to affix these terms to its outdoor furniture beginning in 1996 and 2001, respectively. These terms have appeared in advertising and brochures for Seaside Casual Furniture's Envirowood line of furniture since 2001. Plaintiff has exercised control, and continues to exercise over the design and manufacture of this line of furniture, for which plaintiff provides a twenty year warranty. Finally, plaintiff has been responsible for and regulates the advertising and promotion of this furniture. It is also important to re-

iterate that defendants never used these terms until the time that the Premium Poly Patios website began to falsely advertise that it sold Seaside Casual Furniture. Therefore, defendants will not be able to rebut the presumption that plaintiff is the owner of these terms.

**The Court cannot wait for United States Patent and Trade Office to rule on the pending applications for the marks "Seaside Casual Furniture", "Shell Back" and "Envirowood" because of the demonstrated harm to the plaintiff and to the public.**

There is no reason to wait for a decision from the United States Patent and Trade Office approving plaintiff's application to register the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" and/or to make a final ruling on Zicom's application to register "Envirowood" because plaintiff has a valid claim to these terms under the *Lanham Act* and under common law.

Plaintiff has continuously used these terms since 1996 and 2001 respectively; and contrarily, defendants have no evidence of prior use of these terms other than having displayed those terms, along with plaintiff's photographs of Seaside Casual Furniture's Envirowood furniture on the Premium Poly Patios website in conjunction with its purported ability to sell this furniture.

Any delay by the court will only result in continuing confusion in the marketplace, which will yield an unreasonable benefit to defendants in their continuing ploy to lure customers to the Premium Poly Patios website, particularly as the season for outdoor activities and the purchase of outdoor furniture approaches. Any delay in ruling in favor of plaintiff will be rewarding defendants for their deceitful and illegal

behavior, and will result in continuing harm to plaintiff's goodwill, name and reputation.

**Defendants should be enjoined from violating the Lanham Act prohibiting defendants from using the domain names www.envirowoodfurniture.com and www.envirowood-furniture.com.**

In addition to providing for the protection of trade names, the *Lanham Act* also regulates the use of domain names through its "anti-cybersquatting" provisions. These provisions state:

> **(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
> **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> **(ii)** registers, traffics in, or uses a domain name that--
> **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> **(III)** is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.
>
> **(B)(i)** In determining whether a person has a bad faith intent described under subparagraph (a), a court may consider factors such as, but not limited to
>
> **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;
> **(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> **(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> **(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> **(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the

intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

**(ii)** Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

*The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d)*

Defendants' registration and use of the domain names www.envirowoodfurniture.com and www.envirowood-furniture.com is confusing to a reasonable consumer because he or she will believe that plaintiff has approved and/or permitted defendants to use these domain names. *See Venetian Casino Resort, LLC*

*v. VenetianGold.com,* 380 F.Supp.2d 737, 743 (E. D. Va., 2005). *See also Sporty's Farm L.L.C v. Sportsman's Market, Inc.,* 202 F.3d 489, 495 (2d Cir. 2000); *Graduate Management Admission Council v. Raju,* 267 F.Supp.2d 505, 510 (E.D.Va., 2003); *Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567 ,581 (E.D.Pa., 2002); *Victoria's Secret Stores v. Artco Equipment Co., Inc.,* 194 F.Supp.2d 704, 720 (S.D.Ohio.E.Div., 2002). This is particularly true when the user of the domain name www.envirowood-furniture.com is redirected to the website www.poly-lumber-furniture.com, which is the website for Premium Poly Patios.

As previously noted, the outdoor furniture marketplace is not for sophisticated consumers. To the contrary, this marketplace, enhanced by the worldwide web, is shopped by persons seeking access to products without having to actually visit a store. There is a great risk that consumers will believe that defendants are authorized dealers for Seaside Casual Furniture's Envirowood collection, as demonstrated by purchases of plaintiff's product through defendants' website. Further, defendants' use of the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" will cause confusion to the consuming public as to Premium Poly Patios' affiliation, connection or association with Seaside Casual Furniture. Finally, having been deceptively directed to the Premium Poly Patios website, and wrongfully informed that Seaside's furniture is not available, consumers will likely purchase Poly-Wood and Poly-Lumber furniture products that are available through this website.

There is no question that bad faith was the motivation for defendants' registration and use of these domain names. Having been spurned by plaintiff, defendants have sought out retribution in the marketplace. Defendants have acted

intentionally and deliberately to benefit from and take advantage of plaintiff's goodwill, good name and reputation, with the intention of causing confusion in the minds of consumers as to the relationship or affiliation between Seaside Casual Furniture and Premium Poly Patios.

Finally, once the customer has been directed to the Premium Poly Patios website, the customer is led to believe that Seaside Casual Furniture is not available, which leads to the reasonable inference that this furniture line is not available at all in the marketplace. The customer is also deceived into believing that Poly-Lumber and Poly-Wood products are of similar quality because these products appear to be the same as Seaside Casual Furniture products.

**Defendants are engaged in unfair competition under the *Lanham Act* and Rhode Island common law by using Plaintiff's trade names "Seaside Casual Furniture", "Shell Back" and "Envirowood" and plaintiff's photographs of Seaside Casual Furniture, and by using domain names that falsely advertise products sold on Defendants' website.**

A valid claim of trademark infringement under Section 43 of the *Lanham Act* will normally by its terms simultaneously state a claim for unfair competition under the *Lanham Act* as well. *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). Section 43(a) of the *Lanham Act* provides broad protection toward prohibiting unfair competition, whether or not the mark is registered. *Two Pesos* at 768, *15 U.S.C. §1125(a).*

Additionally, the same evidence which supports plaintiff's claim of trademark infringement under Section 43 of the *Lanham Act* also supports plaintiff's claim of unfair competition under Rhode Island common law. The common law of Rhode Island provides that one who diverts trade from a competitor by fraudulently

representing that the goods that he markets have ingredients or qualities that in fact they do not have, but which the goods of the competitor do have, is liable to the competitor for the harm so caused. *See Armington* v. *Palmer,* 42 A. 308 (R.I. 1898), *Bostitch, Inc.* v. *King Fastener Co., 140* A.2d 274, 282 (R.I. 1958). *See also, Schroeder v. Lotito,* 577 F.Supp 708, 720 (D.R.I. 1983). A common law claim for unfair competition also exists upon a showing that "the device or means employed would be likely to confuse and mislead the public generally to purchase the product or patronize the shop of one person when the actual intention was to purchase the product or patronize the shop of another." *Merlino v. Schmetz,* 20 A.2d 266, 267 (R.I. 1941), *Schroeder* at 724, *National Lumber* at 434.

Plaintiff has already established its protected interest in the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood". The defendants' bait and switch scheme using the domain name www.envirowood-furniture.com; and plaintiff's photographs on the Premium Poly Patios website all amount to unfair competition under federal and state law. Defendant has intentionally engaged in this conduct to direct customers who wish to purchase Envirowood products to the Premium Poly Patios website. Defendants' use of these domain names will also lead customers to believe that there is a business relationship between Seaside and Premium Poly Patios, and that Premium Poly Patios is an authorized dealer for Seaside Casual Furniture Envirowood products. Once customers have been re-directed to the Premium Poly Patios website, defendants use plaintiff's photographs of Seaside's Envirowood furniture to advertise Seaside furniture it does not have the ability to sell. Having already arrived at the website, the customer discerns that although Seaside furniture is

not available, Poly-Lumber and Poly-Wood furniture is available. In addition to being led to believe that Seaside Casual Furniture is not available in the marketplace, the customer is also led to believe that Poly-Lumber and Poly-Wood products are of similar quality because these products appear on the same website, and have a similar appearance to Seaside Casual Furniture products.

**Plaintiff is entitled to injunctive relief as requested in its motion because there is a strong likelihood that plaintiff will succeed on the merits of its case, plaintiff will suffer irreparable harm if defendants are not restrained from engaging in conduct that violates the Lanham Act and Rhode Island common law, the balancing of the equities favors plaintiff and because a ruling in favor of the plaintiff will return the marketplace to its status quo prior to the time defendants began to engage in intentional conduct that is bringing confusion to the marketplace.**

As set forth in the Verified Complaint, the Affidavit of Attorney Robert Salter and this Memorandum of Law, there is a strong likelihood that plaintiff will succeed on the merits of its case. Plaintiff has clearly established that it has continuously used the terms "Seaside Casual Furniture", "Shell Back" and "Envirowood" in the course of the marketing, advertising and sale of its Seaside Casual Furniture Envirowood line of furniture. Such use was prior to any use of these names by the defendants, whose only use of those terms was in the course of purchasing these goods from the Plaintiff and subsequently advertising Seaside Casual Furniture's Envirowood furniture products on the Premium Poly Patios website. As such, plaintiff is entitled to protection under Section 43 of the *Lanham Act* and under common law, and defendants' conduct should be enjoined. Based upon the foregoing principals of law, Plaintiff has also established a protected interest in the domain names www.envirowoodfurniture.com and www.envirowood-furniture.com, and in its photographs of the Seaside Casual Furniture line of Envirowood furniture. Plaintiff has no adequate remedy at law or otherwise for

the damages that will be suffered if defendants are not enjoined from engaging in this deceptive conduct. This conduct will also result in irreparable harm to plaintiff, with a loss of the goodwill, name and reputation associated with Seaside.

The Court should not wait for the United States Patent and Trade Office to issue its decision regarding the rights to the term "Envirowood" because plaintiff has continuously used this term in the marketing and sales of its line of furniture, and Zicom's application falsely represented the time period within which it has used this term. The Court should also not wait for the United States Patent and Trade Office to approve plaintiff's registration of the terms "Seaside Casual Furniture" and "Shell Back" because there have been no other filings for these terms, and plaintiff has also continuously used these terms in the marketing, advertising and sale of its furniture. Furthermore, there is no reason to allow defendants to continue to benefit from their deceptive trade practices, particularly when such deceptive activity is detrimental to plaintiff and to the consuming public.

In balancing the equities of this case, plaintiff will suffer great hardship if its request for injunctive relief is denied, and defendants will suffer minimal hardship if plaintiff's request for injunctive relief is granted. Furthermore, the public has a great interest in the protection of trademarks, domain names and other property interests as a means of ensuring fair competition in the marketplace, and this includes returning the marketplace to its status quo prior to defendants' actions.

## CONCLUSION

Wherefore, based upon the foregoing, plaintiff requests that this Court issue temporary and preliminary restraining orders, and a permanent injunction.

Arnold Lumber Co.,
d/b/a Seaside Casual Furniture
By its attorneys,

Carl S. Levin (#3336)
Armstrong, Gibbons & Gnys, LLP
155 South Main Street, Suite 301
Providence, Rhode Island 02903
(401) 751-1500 Ext. 26
(401) 751-4124 FAX
clevin@agglaw.com